EXHIBIT 10

## DISTRIBUTION AGREEMENT

This Distribution Agreement ("Agreement") is made and entered into as of the 1st day of January 2008 (the "Effective Date"), by and between Primo Water Corporation ("Primo"), a Delaware corporation having an office and place of business in Winston-Salem, North Carolina, and Artesia Springs, a Texas Corp having an office and place of business in San Antonio, Texas ("Distributor").

### Recitals

Whereas, Primo is in the business of procuring, selling and distributing bottled drinking water, and related products and services, to customers throughout the United States (the "Business"); and

Whereas, Primo desires that Distributor assist Primo in the Business by acting as Primo's exclusive agent and representative for the Product and the Service within the Territory for the Term; and

Whereas, Distributor desires to act as such agent and representative within the Territory and for the Term hereafter defined, subject to the terms and conditions hereof.

### Agreement

Now, therefore, for and in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Definitions.** As used herein, the following terms shall have the respective meanings indicated below:

   (a) "*Affiliate*" shall mean, when used with respect to a person, any other person now or, as to future acts or occurrences, hereafter directly or indirectly controlling or controlled by or under direct or indirect common control with such person.

   (b) "*Best efforts*" means a party's reasonable commercial efforts.

   (c) "*Bottle*" means a three (3) or five (5) gallon, or any other size approved by Primo, container that holds the Product and is constructed of plastic or any other material approved by Primo.

   (d) "*Customers*" shall mean all Primo designated or approved retailer customers of the Business within the Territory, and all "Non-Territory Customers" designated on Schedule "A" hereto, as further defined in Section 4.

---

Case No.
01-15-0003-2518

**Joint Ex.34**

CL000334

Motion to Confirm
Exhibit A

(e) *"Distributor Manual"* shall mean the Primo Distributor Manual, when completed and as amended from time to time by Primo. Distributor acknowledges that Primo may not complete the Distributor Manual until it completes a year or more of operations. The Distributor Manual will be prepared and maintained by Primo for its distributors; will contain detailed provisions and policies regarding the participation in the Business by Distributor; may be amended, updated and rewritten from time to time by Primo in its discretion; and it shall complement this Agreement, but not alter or amend any provision contained elsewhere in this Agreement without Distributor's consent.

(f) *"FDA"* shall mean the U.S. Food and Drug Administration.

(g) *"Premium Territory"* shall mean the Territory designated as "Premium Territory" on Schedule "A" hereto.

(h) *"Premium Accounts"* shall mean the Customer accounts within the Premium Territory and any other Customer account designated as "Premium" on Schedule "A" hereto.

(i) *"Premium Commission"* shall mean the compensation rates designated as "Premium Commission" on Schedule "C" which rates are payable to Distributor on account of Premium Accounts.

(j) *"Product"* shall mean drinking water, produced by or on behalf of Primo, in any Bottle.

(k) *"Service"* shall mean bottled drinking water exchange and supply service provided to Customers, comprised of exchanging filled Bottles for empty Bottles (whether Primo Bottles or not), and delivering filled Bottles without corresponding exchanges of empty Bottles.

(l) *"Territory"* shall mean the geographic area(s) designated on Schedule "A" hereto.

(m) *"Term"* shall mean collectively the Initial Term and any Renewal Term(s) (as those terms are defined in Section 3).

2. <u>Appointment; Purchase Option.</u>

(a) Primo hereby appoints Distributor, and Distributor accepts such appointment, as Primo's exclusive delivery and service agent and representative for the Service within the Territory, and for no other purpose whatsoever, for the Term of this Agreement and pursuant and subject to all the terms, provisions and conditions set forth herein, the Schedules hereto (as amended from time to time and which are incorporated herein by reference), and the Distributor Manual (as amended from time to time and which is incorporated herein by reference). Distributor acknowledges that it has paid no

CL000335

fee or other consideration for this appointment, that the only consideration therefor consists of the mutual promises and covenants contained herein, and that it has no franchise rights hereunder, or any other rights not specifically set forth herein. Nothing herein will be interpreted as imposing an obligation upon Primo to purchase from, or to distribute through, Distributor any specific amount or value, or minimum volume, of Product, and Distributor acknowledges and agrees that there is no guarantee of any minimum amount of compensation for Distributor under this Agreement. It is understood and agreed that Primo reserves the right to discontinue offering any Product for sale at any time, without incurring any liability to Distributor on account thereof. Nothing in this Agreement shall limit, or be deemed to limit, Primo's right to sell or distribute Product or similar water products itself or through other distributors as permitted under this Agreement, regardless of the amount of Product (if any) purchased from, or distributed through, Distributor hereunder. Distributor acknowledges and agrees that it is not relying on any information, projections, forecasts, pro-formas or other information provided by Primo or its Affiliates. Any investment by Distributor in any property, plant, equipment or labor in anticipation of, or in connection with, this Agreement is at Distributor's sole risk.

(b)    Nothing in this Agreement shall be deemed to prevent Primo, any of its Affiliates or any agent working on its or their behalf from (i) marketing, distributing or selling bottled water products in the Territory in containers other than three (3) or five (5) gallon sizes, or providing the Service in the Territory with respect to bottled water in containers other than three (3) or five (5) gallon sizes, provided Distributor is not at such time distributing Product or providing the Service in the Territory with respect to identically-sized Bottles for Primo hereunder, or (ii) providing bottled water sale and delivery services to home and/or office customers (as opposed to retailer customers) in the Territory.

(c)    If Distributor fails to fully comply with all of the terms, conditions and obligations of this Agreement (including without limitation those set forth in the Distributor Manual), then Primo or its Affiliates or agents may, without limiting Primo's other rights and remedies hereunder or at law or equity, provide the Product and Service to Customers in the Territory until such time as Distributor recommences full compliance with the terms, conditions and obligations of this Agreement (including without limitation the Distributor Manual).

(d)    Primo shall have the right and option, exercisable at any time during the Term at Primo's sole option, to purchase all of Distributor's right, title and interest in, to and under this Agreement, and, in Primo's sole discretion, any or all trucks, trailers, forklifts, warehouse leases, and other equipment used, or required to be used, by Distributor exclusively in connection with the performance of its obligations under this Agreement ("Equipment"), for an amount equal to the sum of (i) one times trailing twelve months bottles delivered, (12) month period ending on the date fifteen (15) days prior to the proposed effective date of such purchase ("Purchase Date"), plus (ii) the fair market value of any Equipment purchased under this provision. The fair market value of the Equipment shall be mutually agreed upon by the parties. If the parties are unable to agree on fair market value within fifteen (15) days of Primo's providing notice of its exercise of the option hereunder, fair market value shall be determined by the average of two

*Distribution Agreement*                                                     Page 3

**CL000336**

independent third party appraisals, one obtained by the Distributor and one obtained by Primo, provided the values are within 20% of each other. If the two appraisals have a disparity greater than 20%, a third appraisal shall be performed by a mutually agreed upon independent third party. Fair value will then be calculated as the average of the three appraisals. Primo may exercise such option by providing Distributor written notice thereof at least thirty (30) days prior to the proposed Purchase Date. Distributor agrees to execute and deliver all such further documents, instruments of conveyance, assignment and transfer, and to take any further action necessary to assign to Primo, all right, title and interest of Distributor under this Agreement as well as in and to the Equipment as described above. This Agreement shall be deemed terminated on the Purchase Date immediately upon completion of the purchase. For the avoidance of doubt, the parties acknowledge and agree that Distributor's obligation under Article 9 not to compete with Primo for two (2) years after termination shall apply to a termination effected through Primo's exercise of the purchase option described in this Section 2(d).

3.      **Term.** This Agreement shall commence on the Effective Date specified above, and shall, unless earlier terminated pursuant to the provisions hereof, continue until the tenth (10th) anniversary thereof ("Initial Term"), when it shall either terminate pursuant to the provisions hereof, or, unless so terminated, be automatically renewed for one or more successive one-year terms ("Renewal Terms"), each of which shall be subject to the termination and all other provisions hereof (collectively the "Term").

4.      **Customers and Territory.** Distributor's appointment and authority hereunder is limited to its servicing of Primo-designated (or approved) retailer customers within the Territory specified on Schedule "A" hereto ("Customer"), which Territory may be amended and adjusted by Primo from time to time during the Term hereof only with Distributor's prior written consent. Distributor shall have no proprietary interest in the Territory or any Customer. Primo may add, terminate or modify its customer relationships, within or without the Territory, in whole or in part, in its sole and absolute discretion without obligation to Distributor. Primo and Distributor may together designate a portion of the Territory as "Premium Territory" for a fixed period of time, as set forth on Schedules "A" and/or "G". With regard to any Premium Territory, Distributor shall be entitled to the "Premium Benefits" set forth on Schedule "G" hereto during the term of such Premium Territory designation. Upon sixty (60) days notice to Distributor, Primo may remove all or any portion of the Premium Territory from the "Premium" designation and category prior to the end of the term of such Premium Territory designation. Whenever Primo gives Distributor notice of Primo's proposed removal of all or any portion of the Territory from "Premium" status, Distributor shall then have sixty (60) days within which to accept such removal and maintain such removed Premium Territory within the Territory consistent with all the terms and provisions hereof. Absent such acceptance by Distributor, Primo may reassign such removed Premium Territory to any other distributor of Primo's choice, or to itself.

*Distribution Agreement*                                                    Page 4

**CL000337**

5. **Distributor Duties.**

(a) **Bottle Exchange Service, Sales and Prices.** Distributor shall provide Product (in any such Bottle size required by Primo) and the Service on Primo's behalf to Customers in the Territory and any "Non-Territory Customers" listed on Schedule "A" hereto, pursuant to the provisions hereof, including the Primo Distributor Manual, and Primo's instructions and guidelines from time to time not inconsistent herewith, at such prices to the Customer as Primo may specify from time to time for its Product and Service. Primo may remove any "Non-Territory Customer" from Schedule "A" in its discretion upon thirty (30) days notice to Distributor.

(b) **Inventory.** Distributor shall only store Product in warehouse locations approved in advance and in writing by Primo. Distributor shall maintain a sufficient quantity of approved warehousing capability and Product in inventory to properly service the Customers in accordance with this Agreement, as determined by Primo from time to time in its sole discretion.

(c) **Set-up Process and Business Maintenance.** Distributor shall (i) be responsible for implementing the Bottle exchange program at a Customer's place of business in accordance with the terms of this Agreement, the Primo Distributor Manual, and instructions and directions provided by Primo from time to time not inconsistent herewith; (ii) elicit the Customer's input and cooperation with the set-up process; (iii) be responsible for selecting the location of the display and installing and maintaining the display at the Customer's facility; (iv) obtain and maintain in full force and effect, at its expense, all permits, licenses, registrations and authorizations necessary to operate and maintain a food storage facility and to otherwise carry out fully all of its duties and responsibilities under this Agreement; (v) cooperate with and assist Primo in obtaining and maintaining any and all necessary permits, licenses and authorizations, at Distributor's expense, for the conduct of the Business in the Territory; (vi) set up new Customers within a maximum of thirty (30) days after being notified by Primo, unless Primo designates a greater period; (vii) keep Primo advised as to set-up progress and all issues involving the operation of the Business in the Territory; and (viii) seek Primo's advice and assistance when, as and where necessary or appropriate. The location and condition of the displays shall be in conformance with all applicable laws and regulations, and without limiting the foregoing, Distributor shall be responsible for maintaining all displays and bottle racks in a manner consistent with retail food products. Expenses related to the set up of the Bottle exchange program shall be borne by the Distributor.

(d) **Deliveries; Avoidance of Stock-Outs.** Distributor shall plan and execute such deliveries of filled Bottles to each Customer in a manner to avoid situations in which Customers do not have sufficient inventory of filled Bottles to meet consumer demand ("Stock-Out"). Distributor shall not allow any Customer to be in a Stock-Out condition for more than thirty-six (36) hours. Distributor shall also maintain the additional performance standards set forth in Schedule "C" and the Distributor Manual. Distributor shall be responsible for monitoring the sales history and demand information of each Customer location in order to avoid Stock-Outs. Distributor shall make its best efforts to

---

*Distribution Agreement*                                                    Page 5

**CL000338**

comply with Customers' commercially reasonable delivery requirements and other criteria. Distributor shall not be in breach of the provisions of this Section if its failure to avoid a Stock-Out or its failure to maintain the required monthly performance standards set forth in the Distributor Manual is caused primarily by Primo's failure to meet one or more of its material obligations to Distributor herein.

(e)     Reporting and Inspections.  Distributor shall comply with the reporting requirements set forth on Schedule "D" hereto and in the Primo Distributor Manual. Primo may make commercially reasonable changes to the reporting requirements periodically in its sole discretion.  Distributor agrees that Customer, and or Primo, may inspect Distributor's facilities, including without limitation any warehouse location used to store Product, upon reasonable notice to Distributor.

(f)     Billing and Collection.  While Primo shall be generally responsible for the billing and collection of Customer accounts, to the extent requested by Primo from time to time, Distributor shall submit invoices to, and collect Primo's receivables from, or make deliveries on a COD basis to and collect payment from designated Customers on Primo's behalf. Distributor shall account for and remit all such collections to Primo in accordance with procedures established by Primo from time to time, including procedures set forth in the Primo Distributor Manual.

(g)     Insurance.  Distributor shall maintain, at its sole cost and expense, insurance in the types and amounts set forth on Schedule "E" hereto.  All policies of insurance procured by Distributor shall (i) be issued in a form acceptable to Primo by insurance companies with a financial rating of not less than A-8 as rated in the most currently available "Best's" insurance reports, and licensed to do business in the Territory; (ii) be written as primary policies and not contributing with, nor in excess of, coverage that Primo may carry; (iii) include Primo as additional insured; and (iv) contain endorsements that such policies may not be materially changed, amended, or canceled with respect to Primo except after thirty (30) days' prior written notice from the insurance company to Primo.  Certificates of such insurance and copies of current insurance policies shall be furnished at least annually and additionally upon any policy change, to Primo by Distributor.

(h)     Handling and Transportation of Product and Bottles.  Distributor shall comply with all applicable laws and regulations, including without limitation applicable FDA regulations, and with the procedures set forth in the Primo Distributor Manual, pertaining to the handling, storage and transportation of Product and Bottles.  Without limiting the foregoing, Distributor shall meet Good Manufacturing Practices (GMP) for food holding facilities and (i) maintain Product and Bottles in a warehouse facility that is separate from propane or other incompatible products that Distributor may distribute, (ii) transport Product and Bottles in trailers that are used exclusively for transporting Products and Bottles and that are not, and have not, been used to transport propane or incompatible products that Distributor may distribute.  Distributor shall be responsible, and account to Primo, for all Bottles belonging to Primo.  Distributor shall bear the cost of loading and

CL000339

unloading Bottles at locations, which are to be used in Distributor's performance of its duties hereunder.

(i) **Identification, Storage and Return of Empty Bottles.** Distributor shall segregate all empty Bottles returned from Customers based on their brand, and shall store all empty Bottles in accordance with all applicable laws and the provisions of this Agreement pending their return to Primo or a third party designated by Primo. Unless directed otherwise by Primo or unless otherwise set forth in the Distributor Manual, Distributor shall return all empty Bottles returned at retail locations to Distributor's warehouse at Distributor's sole cost. Primo will pick up empties at Distributor's warehouse and return to Bottler, at Primo's sole cost. Distributor acknowledges and agrees that all such empty Bottles are intended to be refilled and reused for human drinking water, and shall comply with all applicable laws and regulations applicable to the storage, handling and transport of such Bottles.

(j) **Service Program; Displays and Other Equipment; Product and Bottles.**

(i) Distributor shall comply with all requirements for the provision of the Service designated for Distributor on Schedule "B" hereto. All displays and other equipment provided by Primo to Distributor under or in connection with this Agreement shall remain the property of Primo. Distributor shall maintain all displays and other equipment provided to it by Primo hereunder in good condition and appearance, ordinary wear and tear excepted. Distributor will account to Primo monthly on a reconciliation form provided by Primo for all such equipment. Through the reconciliation process, if discrepancies or damages are found, the Distributor will be responsible for any damage, loss or deficit and shall either reimburse Primo annually for any damage, loss or variances at replacement cost or replace such lost, missing or damaged equipment with replacement equipment satisfactory to Primo. Distributor will execute, and cooperate with Primo in filing documents sufficient to evidence and protect Primo's ownership or other interest in any Primo property furnished to Distributor by Primo.

(ii) Distributor will also account to Primo monthly on a reconciliation form provided by Primo for (1) all Product and Bottles provided to Distributor by or on behalf of Primo, and (2) all Product and Bottles returned by consumers or Customers to Distributor. The foregoing shall include, but shall not be limited to empty Bottles, including without limitation bottles marketed, sold or distributed by persons or companies other than Primo. All of such Product and Bottles shall be deemed the property of Primo for all purposes under this Agreement. Distributor shall maintain all such Product and/or Bottles in good condition and appearance, ordinary wear and tear excepted. Through the reconciliation process, if discrepancies are found, the Distributor will be responsible for any damage, loss or deficit and shall either reimburse Primo annually for any damage, loss or variances at replacement cost or replace such lost, missing or damaged Product or Bottles with replacement Product and/or Bottles satisfactory to Primo. Distributor will execute, and cooperate with Primo in filing, documents sufficient to evidence and protect Primo's ownership or other interest in any such Product or Bottles.

CL000340

(k)  **Computer Hardware/Software & Primo Online Distribution Support Systems ("PODSS").**

(i)  Distributor shall initially have or purchase and maintain such computer hardware and software requirements as Primo may specify from time to time for use in reporting sales and other data to Primo as described on Schedule "F", Section F-2 hereto.

(ii)  Distributor will use the Primo Online Distribution Support Systems ("PODSS") to conduct all Customer transactions and report those transactions to Primo. The PODSS presently consists of handheld terminals (HHT), HHT printers, handheld interface components and PODSS software (collectively "PODSS Components" as listed on Schedule "F" hereto). Primo may, at its discretion, change (by addition, deletion or substitution) the PODSS Components by amending Schedule "F" hereto at any time during the Term hereof. Distributor shall obtain all PODSS Components from Primo pursuant to lease or other agreements then being utilized, and at fees then being charged (if any) by Primo on Schedule "F" for such Components. Distributor will use HHT's to print delivery tickets for all store deliveries. Distributor is responsible for having all delivery information entered into PODSS, including any deliveries made when a HHT was not available or utilized. Delivery data entered into the HHT will be transferred to Primo daily via electronic communication, which meets Primo requirements as described on Schedule "F", Section F-2 hereto. Distributor will obtain and maintain at its expense a dedicated means of electronic communication, which meets Primo requirements and enables Distributor to service the Customer base, and will properly and adequately report daily sales, service and Customer activity to Primo. Distributor acknowledges that all PODSS Components shall remain the property of Primo (or the applicable Primo-approved supplier) at all times. Distributor shall be responsible to Primo for any damage to or loss of same, except for normal wear and tear from ordinary and permitted use, in accordance with the values set forth from time to time on Schedule "F", Section F-1 hereto. Primo shall promptly repair or replace any PODSS components, which are defective at time of delivery to Distributor or which become inoperative through ordinary wear and tear.

(l)  **Marketing and Advertising Materials.** Cost of installation of vehicle decals, and all other materials desired by Distributor and not required to be furnished by Primo, shall be borne solely by Distributor. Primo shall supply, at no cost to Distributor, marketing materials, including display placards and labels, vehicle decals, and sales and promotional literature and materials, at times and in quantities deemed adequate by Primo. Distributor shall display advertising and marketing materials in accordance with instructions and directions from, and with the approval of, Primo.

(m)  **Business Plan.** Distributor shall prepare and maintain an annual business plan and review the business plan with Primo upon request. Such business plan shall include details typical for a distribution operation as contemplated by this Agreement. Distributor and Primo shall meet and confer at least annually, to discuss and measure

---

*Distribution Agreement*                                                    Page 8

**CL000341**

Distributor's progress against its business plan. Distributor shall exercise its best efforts to meet or exceed the targets and goals set forth in its business plan.

(n) **Manager Designation.** Distributor shall designate, appoint, and notify Primo of, a qualified Distributor employee or agent acceptable to Primo to act as Manager of Distributor's handling of the Business and the execution of Distributor's duties under this Agreement ("Manager"). Distributor shall authorize, empower and cause Manager to be accessible to Primo on Distributor's behalf at all times and to be primarily responsible to Primo for Distributor's faithful, diligent and competent execution of Distributor's duties and responsibilities set forth in this Agreement. Distributor shall be bound by the actions (and omissions) of its Manager.

(o) **Good Manufacturing Practices (GMP), Health and Safety Management and Training.** Distributor shall familiarize, orient, and educate its personnel and employees with the Product and Service and related equipment, and shall be responsible for their and the Customers' training in the safe and proper handling thereof. Distributor shall establish and maintain cordial and professional relationships with all inspectors and health and safety officials, and shall provide regular reports to Primo following all contacts with, and inspections by, all such officials. Distributor may choose to share information on its loss history, loss prevention plans, and programs with Primo. Primo may provide Distributor a listing of recommended injury and illness prevention programs. Where Distributor is not in conformance with these programs or has experienced poor historical performance, Primo may partner with Distributor to provide support, mentoring and training from Primo's technical operations group to ensure Good Manufacturing Practices (GMP). Additional non-conformance will indicate the obligation to include an environmental, health and safety improvement plan with the business plan requirement set forth above. Conformance with recommended injury and illness prevention programs does not preclude the Distributor from complying with all applicable federal, state and local ordinances, standards, and regulations. Distributor shall make reasonable efforts to resolve any health or safety issue regarding the Business in the Territory.

(p) **Additional Duties.** Distributor shall perform the additional duties, if any, specified on Schedule "C" hereto, and shall adhere to other commercially reasonable requirements as established by Primo from time to time with notice to Distributor and not inconsistent with the terms hereof, as well as all requirements and procedures set forth in the Distributor Manual.

(q) **Distributor Best Efforts.** Distributor shall exercise its Best Efforts to meet and fulfill all of its duties and other obligations established in this Agreement. However, Distributor's exercise of such Best Efforts shall not operate to forgive or excuse any failure by Distributor to meet any obligation or duty imposed upon it by this Agreement. Distributor shall not engage in any activity to circumvent this Agreement.

(r) **Notice of Potential Claim to Primo.** Distributor shall notify Primo (attention: President) in writing (via facsimile), by email or verbally within two (2)

---

*Distribution Agreement*                                                    Page 9

CL000342

business days upon *first* learning or being advised of any fact(s), circumstance(s) or contention(s) which could constitute or potentially result in a claim against Distributor, Primo, any third party that provides Product to Distributor, Retailer, or any customer, regardless of how specious or speculative such claim or action might be or appear to be (hereafter collectively "occurrence"). Within five (5) business days of the earlier of the delivery, or the deadline for delivery, of such notice to Primo, Distributor shall coordinate the investigation, or cause to be diligently investigated by a qualified investigator, any such occurrence with an objective of identifying and documenting all of the relevant facts relating to the occurrence (including, without limitation, the cause of the occurrence). Such investigation shall include, but shall not be limited to, physically inspecting affected premises and property (including both real and personal property), if necessary, interviewing witnesses and others who may have information regarding the occurrence or related facts or circumstances, if necessary, and documenting the foregoing through photographs and legible notes, if necessary. Distributor shall complete and forward to Primo the Primo Incident Report in its then current form, along with any backup photographs, notes and other documentation, with regard to any such occurrence within a reasonable timeframe as agreed between Primo and Distributor. Distributor shall also fully cooperate with Primo in any investigation Primo may elect to undertake of an occurrence.

(s) **Emergency Service.** Distributor shall be available and on-call twenty-four hours per day, seven (7) days per week for emergency response, and shall respond to any emergency call related to the Business in person or by telephone within thirty minutes of initial confirmed notification.

(t) **Distributor Conference.** Distributor acknowledges that Primo anticipates conducting an annual distributor conference at a location to be determined by Primo. Distributor acknowledges and understands the importance of having its representatives attend such conference. Accordingly, Distributor shall, at its expense, have at least one of its representatives attend and participate in Primo's annual distributor conference.

6. **Primo Duties.**

(a) **Displays, Signage, Product and Set-up.**

(i) Primo shall provide to Distributor at Primo's cost, displays and signage in sufficient and reasonable quantities in a timely manner for Distributor to perform its duties under this Agreement.

(ii) Primo shall provide, or otherwise make available, in a timely manner, Product to Distributor in sufficient quantities for Distributor to carry out its duties hereunder, in accordance with Schedule "B" hereto.

(iii) Primo shall provide Distributor with reasonable notice of Customer accounts to be set up, and provide advice and reasonably necessary assistance to Distributor during the set-up process

---

*Distribution Agreement* Page 10

CL000343

(b) **Customer Sales Data and History.** Primo shall provide Distributor with reasonable access to Customer sales data and transaction history through the PODSS. Primo shall also make reasonable efforts to fulfill Distributor requests for data collected through the PODSS but not provided in standard screens and reports.

(c) **Bottle Refurbishment and Refilling.** Bottle refurbishment and refilling shall be accomplished pursuant to Schedule "B" hereto.

(d) **Collections.** Except as otherwise provided herein, Primo shall be responsible for submitting invoices to, and collecting receivables from, Customers.

(e) **Primo Online Distribution Support Systems (PODSS) and Software.** Primo will provide, or cause to be provided, to Distributor the PODSS Components listed on Schedule "F" hereto pursuant to lease or other agreements then being utilized, and at fees then being charged (if any), by Primo for such Components. Lease and rental fees for PODSS Components shall be listed on Schedule "H" hereto. Primo shall repair or replace any PODSS Components that are not functioning properly or that are defective. Primo shall also provide to Distributor, at no cost to Distributor, software applications to assist Distributor in monitoring Primo accounts, scheduling and routing of deliveries, to assist Distributor in avoiding Stock-Outs, and in maintaining the required monthly performance standards set forth in the Distributor Manual. All such Components and software shall remain the property of Primo.

(f) **Marketing and Advertising Materials.** Primo will supply to Distributor a reasonable amount of point-of-purchase advertising material and a reasonable number of vehicle decals, at Primo's discretion and at Primo's expense.

(g) **Payment to Distributor.**

(i) Primo shall pay Distributor for its services hereunder in accordance with the payment rates and schedule set forth on Schedule "G" hereto, which may be amended by Primo at any time on a commercially reasonable basis, upon giving at least thirty (30) days advance notice thereof to Distributor.

(ii) Primo shall have the right at all times to set off any amounts due from Distributor to Primo against any amounts otherwise payable by Primo to Distributor. Primo may not exercise this right of set off in an arbitrary, capricious or commercially unreasonable manner.

(iii) All payments due from Primo to Distributor for services provided in any month shall be disbursed on or before the 30th of the following month (or, in the case of February, the last day of February). Should the 30th (or last day of February) fall on a weekend or holiday, payment will be disbursed on the next business day. Generally, payments will be made on or around the 15th of the following month, for deliveries during the previous month.

---

CL000344

(h)  **Communication to Distributor Regarding Customers.**  If Primo receives any communication from a Customer regarding a Stock-Out, Distributor's failure to maintain the required monthly performance standards set forth in the Distributor Manual, or any other unsatisfactory performance by Distributor, Primo shall promptly notify Distributor of same. Primo shall also notify Distributor if Primo determines that a Customer may not be able to fulfill its financial obligations to Primo or if Primo intends to terminate a Customer account (which Primo may do for any or no reason in its sole and absolute discretion).

(i)  **Annual Report.**  On an annual basis, at a time and location determined by Primo, Primo shall inform and discuss with Distributor the general state of Primo's overall business as it may apply to Distributor ("Primo Annual Report"). Primo may elect to present such Primo Annual Report to Distributor in a meeting with, and as part of a report to, other distributors.

(j)  **Relationship Management.**  Primo shall designate, appoint and notify Distributor of a qualified Primo employee as the primary point of contact between Primo and Distributor. Such Primo employee shall be responsible for assuring that all matters of contact, communication or conflict between Distributor and Primo are dealt with promptly and professionally on behalf of Primo. Such Primo employee shall be reasonably available to Distributor on Primo's behalf. In addition to the above referenced employee, Primo shall designate, appoint and notify Distributor of the appropriate Primo employee(s) to assist with all accounting and financial aspects of the relationship between Primo and Distributor. Primo may amend such employee(s) designation by substitution of a different, but qualified, employee(s), in its discretion.

(k)  **Primo Best Efforts.**  Primo shall exercise its Best Efforts to meet and fulfill all of its duties and other obligations established in this Agreement. However, Primo's exercise of such Best Efforts shall not operate to forgive or excuse any failure by Primo to meet any obligation or duty imposed upon it by this Agreement. Primo shall not engage in any activity to circumvent this Agreement.

(l)  **Notice of Potential Claim to Distributor.**  Primo shall notify Distributor in writing within one business day upon learning or being advised of any fact(s), circumstance(s) or contention(s), which could potentially result in a claim against Distributor, regardless of how specious or speculative such claim or action may be. Primo will cooperate with Distributor in the investigation of any such fact(s), circumstance(s), contention(s), claim or potential claim.

7.  **Trademark License.** Primo hereby grants Distributor the non-exclusive right to use the trademarks listed on Schedule "1" ("Primo Marks") within the Territory solely in conjunction with Distributor's performance of its duties under, and solely during the Term of, this Agreement. Any and all uses by Distributor of any of the Primo Marks, other than the regular and intended use of Primo Marks contained on or in materials supplied directly by Primo, must be approved in advance in writing by Primo. Distributor shall

CL000345

maintain all Bottles, displays and other articles, property and materials used in conjunction with the Primo Marks and the Service and the Business at a high level of quality and appearance satisfactory to Primo. Primo may inspect Distributor's premises and all such property and materials upon reasonable notice to Distributor. Distributor will not use any of the Primo Marks or the designation "Primo" in any form as a trademark, a trade name, or in its corporate or business name without the prior written approval of Primo, not to exceed the Term of this Agreement. Distributor acknowledges the validity of, and will not contest, any such Marks. Distributor will immediately advise Primo in writing upon learning of any infringement, potential infringement, or misuse of the Primo Marks. Distributor shall cease all use of the Primo Marks upon termination of this Agreement.

8.    Confidentiality and Trade Secrets. Distributor acknowledges that, as Primo's delivery and service agent and representative, it may have access to and may become familiar with various trade secrets and confidential information of Primo, including, but not limited to, materials or records of a proprietary nature, trade secrets, engineering or technical data, records and matters relating to research, finance, accounting, sales, profits, markets, market research, personnel, management and operations, manufacturing processes or techniques, matters particularly relating to operations such as customer lists, price lists, specifications, and information regarding customers and their requirements, costs of providing service, and equipment and equipment maintenance costs, customer requirements, computer systems, programs, files, and other data not generally available to the public (the "Confidential Information"). Distributor agrees not to communicate, divulge or use for the benefit of itself, or any other person or entity, any such Confidential Information during the Term of this Agreement and thereafter, or any similar data or material which may come to Distributor as a result of its participation in the Business, without the prior express written consent of Primo. Distributor will not remove any Confidential Information or similar material from its or any other's premises or make any use of Confidential Information or similar material, except with the express written consent of Primo and only in furtherance of the purposes of this Agreement and the Business. Upon the termination of this Agreement, Distributor will, at the election of Primo, either return all of Primo's Confidential Information and similar material to Primo, including any and all copies of documents or files with Confidential Information or similar material in whatever form, or destroy it. Confidential Information shall not include information that, at the time of disclosure by Primo, is in the public domain, or information that later becomes part of the public domain through no act or omission of Distributor or any of its Affiliates. Distributor may disclose Confidential Information only to the extent that it is required by law or governmental authority to disclose, provided that Distributor gives Primo as much advance notice as is possible regarding any required disclosure, and that any such disclosure is limited to the applicable governmental requirement. With respect to Trade Secrets of either party, the other party will not disclose any such Trade Secrets to any person or entity at any time except in furtherance of the purposes of this Agreement and the Business and only if and when specifically authorized by the other party. "Trade Secrets," for purposes of this Agreement, means business or technical information of either party, including its processes, formulas, devices, techniques and compilations that it attempts to maintain in secret and that derive commercial value for it from not being generally known to the public or readily ascertainable through independent development or reverse engineering.

*Distribution Agreement*                                                      Page 13

**CL000346**

At the termination of this Agreement, or at any other time the other party may request, a party in possession of any of the other party's Trade Secrets will deliver all of same promptly to the other party, including any documents or computer files or data containing any of the other party's Trade Secrets.

9.      **Non-Competition and Non-Solicitation.**

        (a)     During the Term of this Agreement and a period of eighteen (18) months after expiration or termination of this Agreement for any reason, Distributor will not, directly or indirectly, (i) provide bottled-water bottle exchange service on behalf of itself or anyone other than Primo, (ii) compete against Primo by selling or distributing bottled water products in bottle volumes greater than 2.5 gallons to any retailer customer, or (iii) solicit any customer or potential customer of Primo, as follows: (x) during the Term of this Agreement, the foregoing restrictions shall apply anywhere in the world; and (y) during the eighteen (18) months after expiration of termination of this Agreement for any reason, the foregoing restrictions shall apply, (A) within the entirety of any state comprising any portion of the Territory and within the entirety of any state contiguous to any such state, and (B) within one hundred (100) miles of any portion of the Territory.

        (b)     Distributor shall not: (i) provide Product to any third party, or make any use of the Primo Marks, or any other property of Primo, except on behalf of Primo pursuant to and in full compliance with, this Agreement, or (ii) deliver <u>any</u> product to anyone, other than a Primo Customer pursuant to this Agreement, in any truck, trailer or other vehicle that visibly bears Primo's name or any Primo Mark.

        (c)     Distributor expressly acknowledges and agrees that it shall have no "underground" accounts either within or without the Territory ("underground" accounts are accounts for bottled water or bottled-water bottle exchange service not authorized by Primo or permitted under this Agreement, or for which payment for such bottled water or bottled-water bottle exchange service from the retail customer is not remitted in full to Primo).

        (d)     Distributor acknowledges and agrees that it will have specific knowledge of the affairs of Primo and its business and accordingly, all covenants, provisions and restrictions in this Agreement, in particular, without limitation, all covenants, provisions and restrictions contained in this Article 9 are reasonable, appropriate, fair and valid in the circumstances, and all defenses to the strict enforcement thereof by Primo are hereby waived by Distributor.  Distributor acknowledges and agrees that any breach of the covenants, provisions and restrictions contained in this Article 9 hereof shall constitute cause for immediate termination of this Agreement.  Distributor further acknowledges and agrees that in the event of a breach of the covenants, provisions and restrictions contained in this Article 9, Primo's remedy in the form of monetary damages may not be adequate and that Primo shall be and is hereby authorized and entitled, in addition to all other rights and remedies available to Primo, to apply for and obtain from any court of competent jurisdiction interim and permanent injunctive relief and an accounting of all profits and benefits arising out of such breach.

**CL000347**

**10.** **Injunctive Relief.** Distributor and Primo acknowledge that compliance with this Agreement is necessary to protect the business, customers and goodwill of Primo and Distributor, and that a breach of this Agreement by one party will irreparably and continually damage the other, for which monetary damages may not be adequate, and therefore, either party will be entitled to injunctive relief restraining any breach by the other in addition to any other remedy provided by law.

**11.** **Independent Contractors.** It is the intention of the parties that the relationship existing between them shall be that of independent contractors; that nothing herein contained or done pursuant hereto shall constitute Distributor a general agent of Primo for any purpose whatever; and that all things done and to be done by Distributor pursuant to the provisions hereof or done by Distributor in anticipation of this Agreement, unless expressly otherwise provided herein, shall be at Distributor's own cost and expense.

**12.** **Termination Without Cause.** Either party may terminate this Agreement for any reason, expressed or not expressed, by giving the other party written notice of termination at least six months prior to the end of the Initial Term or any Renewal Term. Such termination shall become effective only at the end of such Term.

**13.** **Termination by Primo for Cause.**

(a) Primo may terminate this Agreement immediately upon the occurrence of any of the following events, by giving written notice thereof to Distributor:

(i) The conviction of, or entry of a plea of no contest to a charge of, a felony or other charge of criminal conduct involving moral turpitude by Distributor's principal manager, or controlling owner or shareholder.

(ii) Distributor's failure to comply with any of the provisions hereof relating to insurance.

(iii) Distributor's liquidation, sale or other disposition of all or a substantial portion of the assets of its business without the prior approval of Primo, which approval will not be unreasonably withheld.

(iv) The transfer by Distributor's owner(s) of a majority of the controlling interest in Distributor without the prior approval of Primo, which approval will not be unreasonably withheld.

(b) Primo may also terminate this Agreement upon the occurrence of any of the following events of default, by giving written notice thereof to Distributor and an opportunity for Distributor to cure such default within the following thirty (30) days (or within the period of time otherwise specified), and upon Distributor's failure to cure within the period specified:

---

**CL000348**

(i)     Distributor's misuse or unauthorized use of any of the Primo Marks.

(ii)    Distributor's theft or other misappropriation of property owned by Primo or used in the Business.

(iii)   Distributor's competition with Primo.

(iv)    Territory violation by Distributor.

(v)     Distributor's failure to comply with applicable laws and regulations.

(vi)    Distributor's engagement in unauthorized handling, sales, service or delivery of Product or Bottles, whether or not in competition with Primo.

(vii)   The filing by Distributor of a petition seeking liquidation, reorganization, arrangement, readjustment of debts or any other relief under the Federal Bankruptcy Code or under any other act or law pertaining to insolvency or debtor relief, whether state or federal, or the filing against Distributor of any such petition which is not dismissed within sixty (60) days of filing.

(viii)  A custodian, trustee, receiver, or assignee for the benefit of creditors is appointed or takes possession of any of Distributor's assets.

(ix)    Distributor becomes insolvent.

(x)     The revocation or suspension of any of Distributor's business licenses or permits relating to any of Distributor's duties or responsibilities hereunder.

(xi)    Distributor's failure to make any payment to Primo when due.

(xii)   Distributor's breach of, or failure or inability to execute, any of its other duties or obligations contained herein.

14.     <u>Termination by Distributor for Cause.</u>

(a)     Distributor may terminate this Agreement immediately upon the occurrence of any of the following events, by giving written notice thereof to Primo:

(i)     The conviction of, or entry of a plea of no contest to a charge of, a felony or other charge of criminal conduct involving moral turpitude by Primo's principal manager, or controlling owner or shareholder.

(ii)    Any assignment of this Agreement by Primo, other than an assignment by Primo authorized under Section 17.

---

CL000349

(b)     Distributor may also terminate this Agreement upon the occurrence of any of the following events of default, by giving written notice thereof to Primo and an opportunity for Primo to cure such default within the following thirty (30) days (or within the period of time otherwise specified), and upon Primo's failure to cure within the period specified:

(i)     Primo's theft or other misappropriation of property owned by Distributor.

(ii)    Primo's failure to comply with applicable laws and regulations.

(iii)   A custodian, trustee, receiver, or assignee for the benefit of creditors is appointed or takes possession of any of Primo's assets.

(iv)    Primo becomes insolvent.

(v)     Subject to Primo's right of setoff, Primo's failure to meet a scheduled payment to Distributor when due. The filing by Primo of a petition seeking liquidation, reorganization, arrangement,     readjustment of debts or any other relief under the Federal Bankruptcy Code or under any other act or law pertaining to insolvency or debtor relief, whether state or federal, or the filing against Primo of any such petition which is not dismissed within sixty (60) days of filing.

(vi)    The revocation or suspension of any of Primo's business licenses or permits relating to any of Primo's duties or responsibilities hereunder.

(vii)   Primo's breach of, or failure or inability to execute, any of its other duties or obligations contained herein.

15.     **Post-Termination Requirements.** In addition to all other requirements, terms, provisions and conditions of this Agreement, upon termination of this Agreement for any reason, the following additional requirements and provisions shall apply:

(a)     Termination of this Agreement shall not release either party from the payment of any sum then or thereafter owing to the other, and, subject to Primo's right of offset, all such amounts shall be paid within thirty (30) days of the termination hereof.

(b)     Distributor shall, within thirty (30) days after termination hereof, return to Primo in good and usable condition, normal wear and tear excepted, all property owned by Primo. Distributor shall, within thirty (30) days after termination hereof, pay Primo replacement value for all Primo property which Distributor used in the Business but which cannot be located or which is not in good and usable condition, normal wear and tear excepted.

---

CL000350

(c) Distributor shall cooperate with Primo in obtaining any and all necessary permits and authorizations for Primo's continuation of the Business in the Territory, and shall transfer all such permits then in Distributor's name to Primo if allowed by the issuing authority.

16. **Severability.** The provisions of this Agreement shall be severable, and the invalidity or unenforceability of any provisions hereof shall not affect the validity or enforceability of the remaining provisions. Any provision or term declared void or unenforceable by a court or other body having jurisdiction and authority to do so shall, where possible, be modified or rewritten to reflect the intent of the parties expressed herein.

17. **Assignment.** This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their successors and assigns; provided, however, that Distributor's rights hereunder shall not be assigned or transferred, in whole or in part, directly or indirectly, whether by Distributor, by operation of law, or otherwise, to any person, company, firm, or corporation, without the prior written consent of Primo, which shall not be unreasonably withheld. Without limiting the foregoing, Distributor may not subcontract any of its duties or obligations under this Agreement without the express written consent of Primo. Primo may condition any such consent, if it chooses to grant such consent, to Distributor's entering into a subcontract with the proposed subcontractor on terms and conditions acceptable to Primo in its absolute discretion.

18. **Claims and Indemnity.**

(a) **Indemnification by Primo.** Primo shall protect, defend, indemnify and hold Distributor harmless from and against any and all loss, verdict, award, settlement, claim, cost or expense whatsoever, including without limitation personal injuries, property damages or economic losses, as well as any other damages of any nature whatsoever, including compensatory, special, consequential, punitive or exemplary damages, attorneys' fees and disbursements, with respect to third party claims arising from Primo's misfeasance, negligence, or failure to meet any of its obligations hereunder. Primo shall have the right to defend any claim or action for or in which Distributor seeks indemnification.

(b) **Indemnification by Distributor.** Distributor shall protect, defend, indemnify and hold Primo harmless from and against any and all loss, verdict, award, settlement, claim, cost or expense whatsoever, including without limitation personal injuries, property damages or economic losses, as well as any other damages of any nature whatsoever, including compensatory, special, consequential, punitive or exemplary damages, attorneys' fees and disbursements, with respect to third party claims arising from Distributor's handling of the Product or its misfeasance, negligence, or failure to meet any of its obligations hereunder. Distributor shall have the right to defend any claim or action for or in which Primo seeks indemnification.

CL000351

(c)     Before making a claim for indemnification hereunder, the parties hereto shall cooperate and work together and with their respective insurers in an effort to determine in good faith which party is the responsible indemnitor hereunder.

(d)     The right to indemnification hereunder shall survive the termination of this Agreement.

19.     **Force Majeure.**  Neither party shall be liable hereunder by reason of any failure or delay in the performance of its obligations hereunder, on account of strikes, shortages, riots, insurrection, fires, flood, storm, explosions, acts of God, war, terrorism, governmental action, labor conditions, earthquakes, material shortages, or any other cause beyond the reasonable control of such party (collectively, *"Force Majeure Events"*).  The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased.

20.     **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without regard to its laws and decisions relating to conflicts of laws.

21.     **Dispute Resolution.**  Any dispute or disagreement involving or including Primo and which pertains to or arises out of this Agreement or the Business shall be settled by non-binding mediation to be conducted in Winston-Salem, North Carolina by a mediator selected jointly by the parties or, in the absence of agreement on mediator selection, by a mediator appointed by the American Arbitration Association in accordance with its rules and provisions pertaining to non-binding mediation in commercial disputes.   Except for the parties' own expenses, including legal fees, which shall be borne individually, the parties shall jointly share the costs and expenses of such mediator.  If such mediation fails to resolve such dispute or disagreement, then the dispute or disagreement shall be settled by arbitration to be held in Winston Salem, North Carolina, in accordance with the rules of the American Arbitration Association, or its successor.  The decision of the arbitrator shall be conclusive and binding on the parties to the arbitration.  The prevailing party in any arbitration shall be entitled to recover from the other party or parties, the costs and expenses of maintaining such arbitration, including reasonable attorney's fees and costs incurred before such arbitration is commenced, during arbitration and on appeal.

22.     **Amendment.**  This Agreement, including all Schedules hereto (as amended from time to time) and the Primo Distributor Manual (upon its completion and as amended from time to time), constitutes the entire agreement between the parties, and it supersedes and terminates any and all prior agreements and understandings between them relating to the subject matter hereof.  Except as may be otherwise provided herein, this Agreement may be amended or changed only by an instrument in writing signed by both parties hereto.

23.     **Notices.**  Any notices required hereunder shall be sent by fax or e-mail, followed by "hard copy" first class mail, as follows:

CL000352

**To Primo:**
Primo Water Corporation
101 N. Cherry Street, Suite 700
Winston-Salem, NC 27101

**To Distributor:**
Artesia Springs
8130 Interchange Pky
San Antonio, TX 78218

24.    Non-waiver. The election or failure by either party hereto to forego or not exercise any right hereunder shall not constitute a waiver of any other right or obligation hereunder.

Primo Water Corporation
("Primo")

By: _____

Title: VP Operations

Artesia Springs
("Distributor")

By: _____

Title: OWNER

---

*Distribution Agreement*                                                    Page 20

CL000353

## LIST OF EXHIBITS TO DISTRIBUTION AGREEMENT

| | |
|---|---|
| Schedule A | Territory & Customers |
| Schedule B | Bottle Program |
| Schedule C | Additional Distributor Duties |
| Schedule D | Distributor Reporting Requirements |
| Schedule E | Distributor Insurance |
| Schedule F | Hardware/Software and PODSS Components & Technology |
| Schedule G | Distributor Compensation Schedule |
| Schedule H | Lease/Rental Fees |
| Schedule I | Primo Marks |

CL000354

## SCHEDULE A – Territory and Customers

"Territory":
State of Texas :

| COUNTY | DISTRIBUTOR | DIST CODE | STAT |
|--------|-------------|-----------|------|
| | See Attached list | | |

CL000355

## SCHEDULE B – Bottle Program

- Primo will own and supply all Bottles (Primo will not directly supply Bottles returned from Customers, but shall own all such Bottles). All Bottles will remain the property of Primo.

- Primo shall be responsible for having all Bottles filled and refilled.

- Primo will supply to Distributor all Products to service Primo accounts.

Deleted: Product

- Distributors will make dock space available at appointed times to receive Product from suppliers in truckload quantities, deliver Product to and pick-up empty Bottles from Customer accounts, and make dock space available at appointed times to ship returned empty Bottles in truckload quantities to designated suppliers.

- Distributor shall dispose of Bottles only under the terms of this Agreement, shall account to Primo for all Bottles disposed of, and shall remit to Primo all proceeds derived from disposal of Bottles.

- Distributor shall obtain and comply with Primo's directions and instructions with regard to any Bottle in need of service or repair.

- Distributor shall provide to Customers Product which complies with all applicable laws and governmental regulations and which conforms to industry standards.

- Distributor shall obtain Product only from Primo or a third party approved by Primo.

- Distributor takes no responsibility for filling and refilling Bottles, or the content of Bottles as delivered to Distributor; however, Distributor shall be responsible for the Product, Bottles (including contents) and risks from the time of delivery to Distributor.

CL000356

**SCHEDULE C – Additional Distributor Duties**

CL000357

## SCHEDULE D – Distributor Reporting Requirements

Distributor will provide the following information to Primo:

- Month-end accounts (by the third (3rd) business day following the end of each month) of Primo Bottles, non-Primo Bottles, and transport racks all in a form prescribed by Primo.
- Month-end accounts (by the second business day following the end of each month) of displays by size in a form prescribed by Primo.
- Setup status list (bi-monthly) of Customers by phase (site plan, display, Bottles, permit) with actual and planned dates in a form prescribed by Primo
- Primo Incident Report Information whenever advised of a claim or potential claim against Distributor, Primo or a Customer.
- Inspection report within one week of any contact, inspection or other visit by a health or safety official to any location potentially affecting the Business in the Territory.
- Monthly internal inspection report including pest control, hygiene, facility, etc. This inspection report form will be designed by Primo's Technical Operations Group.
- Monthly (or more often when reasonably necessary for the Business) report detailing any problem(s) or issue(s) affecting the Business in the Territory.
- Immediate notice of any governmental third-party hygiene audit of any Product, display, or any Distributor facility or warehouse (giving Primo as much notice as possible and an opportunity to be present at such audit) and a prompt (within one week) written report regarding the results of such audit.
- Prompt (within 24 hours) reporting of any hygiene exceptions noted, including any noted in connection with any internal hygiene audit.
- Distributor shall provide Primo with copies of all licenses, permits, authorizations and registrations that are necessary to operate and maintain a food storage facility and that are otherwise required under and in connection with this Agreement. Distributor shall provide such copies upon acceptance of this Agreement and at such time that any such license, permit, authorization or registration is renewed, re-issued or modified. Distributor shall also provide Primo with immediate written notice if any such license, permit, authorization or registration is terminated, cancelled or revoked.

CL000358

## SCHEDULE E – Distributor Insurance

1.     Public and products liability insurance in an amount not less than $1,000,000 for personal injury, death, or property damage.

2.     Comprehensive automobile liability insurance providing third party liability insurance with $1,000,000 inclusive limits, covering all licensed vehicles owned or operated by or on behalf of Distributor.

3.     Workers' compensation insurance in such amounts as required by law in the Territory.

CL000359

## SCHEDULE F – PODSS Components

**F-1**   **Cost Values**

| Component | Value |
|---|---|
| HHT | $ 1,700.00 |
| HHT Printer | $ 1,100.00 |
| Handheld Interface Components | $ 500.00 |
| Wireless Gateway (opt.) | $ 500.00 |

**Software Components Provided by Primo**
The PODSS software is comprised of applications running on Handheld Terminals (HHT) or available via the Internet to enable the Distributor access to information and to conduct the following activities:

> Update database records
> View and update customer service information
> Reporting and analysis
> View training documentation
> Inventory management

Distributors are responsible for communicating terminations and changes in roles for users with access to PODSS to ensure appropriate user access permissions and security.

**F-2**   **Hardware & Software Requirements**

- Distributor is responsible for maintaining at least one "Windows" compatible computer for accessing the PODSS applications via the Internet. Distributor is responsible for maintaining patches and updates to installed software to minimize vulnerabilities associated with connecting to the Internet.
- Each Distributor computer must meet the following minimum hardware specifications:
    - Pentium III 700mhz processor
    - 256 MB RAM
    - 1 GB available hard disk space
    - Ethernet or wireless configuration for broadband Internet access
- Each Distributor computer must have (at a minimum) the following software installed:
    - Windows 2000 (Windows XP preferred)
    - Microsoft Internet Explorer v. 6.0 or higher

**CL000360**

- Microsoft Office 2000 or higher
- Antivirus software with active update/pattern subscription
- Distributor is responsible for maintaining "broadband" Internet connectivity and installing adequate security measures to protect computers accessing the Internet from malicious attacks, viruses, worms, etc.

CL000361

## SCHEDULE G – Distributor Compensation Schedule

**Regular Commission Schedule**

(A)  **Effective Date: January 1st, 2008**

(B)  **Base Transaction Payment:**
     Effective the above date, the amount due to Distributor per Bottle delivered to
     each Retail Location.

### TRANSACTION AT THE RETAILER

5 Gallon Bottle:        $2.75 non premium Territory $3.00 premium Territory
3 Gallon Bottle:        $2.50 non premium Territory $2.75 premium Territory

Note: Pricing mentioned above includes payment for bottling.

)    In addition, the monthly payment schedules will have the following deductions (if
     applicable):

     1.     Monthly lease fees for Hand Held Terminals as set forth per Schedule H.
     2.     Any other applicable expenses allocated to the Distributor by Primo.
     3.     Any charge-back fees as defined in the Primo Distributor manual.

(D)  Customer Installation Cost: $ 100.00 per location, for the initial set up of displays and
     return bin at retailer locations in a manner satisfactory to Primo and retailer.

All commissions, compensation and expenses set forth per this Schedule, including regular
and premium, are subject to change by Primo in accordance with section 6 (g)(i) of this
Agreement.

CL000362

## SCHEDULE H – LEASE/RENTAL FEES

**HHT's:**
- Current rental fee is One Dollar ($1) per month per unit.
- HHT rental fee may be amended from time to time by Primo as costs escalate or de-escalate

---

CL000363

## SCHEDULE I – Primo Marks

The PRIMO name and logo, including bubble design

CL000364